IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRANDON MINICH,                          :
                        Plaintiff,       :
                                         :        Complaint – Civil Rights
           vs.                           :
                                         :
                                         :
PAMELA BONDI,                            :        Case No.  2:25-CV-00431
Attorney General of the                  :
United States; and                       :
                                         :
                                         :
KASH PATEL,                              :
Acting Director, Bureau of Alcohol,      :
Tobacco, Firearms, and Explosives,       :
                                         :
KASH PATEL,                              :
Director of the Federal Bureau of        :
Investigation,                           :
                                         :
UNITED STATES OF AMERICA,                :
                        Defendants,      :


<u>COMPLAINT</u>

COMES NOW, Plaintiff, Brandon Minich, by and through his attorney of record, Richard

S. Roberts, Jr., Esq., of Giaramita Law Offices, P.C. and brings this action against Defendants,

PAMELA BONDI, Attorney General of the United States and KASH PATEL, Acting Director of

the Bureau of Alcohol, Tobacco, Firearms and Explosives, and KASH PATEL, Director of the

Federal Bureau of Investigation, who brings this action for violations of his rights protected by

federal law and the Constitution of the United States of America.

PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Brandon Minich, is an adult individual, and a natural person who is a citizen of Pennsylvania and of the United States. He presently resides in Allegheny County, Pennsylvania. At present, Mr. Minich wishes and intends to purchase and possess a handgun and long gun for the purpose of self-defense within his own home. Solely because of Defendants' active enforcement of the unconstitutional policies challenged in this matter, Mr. Minich is precluded from doing so.

2.     Defendant, PAMELA BONDI, is the Attorney General of the United States and is sued in that capacity. As Attorney General of the United States, Bondi is the final policymaker and has final decision-making authority over the unconstitutional policies alleged herein. Furthermore, Bondi is responsible for executing and administering laws, customs, practices, and policies for the United States, and is presently enforcing the laws, customs, practices, and policies challenged and complained of in this matter.

3.     Defendant, KASH PATEL, is the Acting Director and Head of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (hereinafter, referred to as "BATFE"), and is sued in that capacity. As Acting Director and Head of BATFE, Patel has final decision-making authority over the unconstitutional policies alleged herein. Furthermore, Patel is responsible for executing and administering laws, customs, practices, and policies for the United States, and is presently enforcing the laws, customs, practices, and policies challenged and complained of in this matter.

4.     Defendant, KASH PATEL, is the Director of the Federal Bureau of Investigation (hereinafter, referred to as "FBI"), and is sued in that capacity.

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.S. § 1331 as it is a civil action arising under the Constitution of the United States, and the laws or treaties of the United States. This Court further has subject matter jurisdiction under 28 U.S.C. § § 1343, 1346, 2201 and 2202.

6.    Venue lies in this Court pursuant to 28 U.S.C. § 1391(e)(1)(B) as the Defendants are officers or employees of the United States or any agency thereof acting in their official capacity or under color of legal authority, or an agency of the United States. Moreover, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Court's judicial district.

## STATEMENT OF FACTS

7.    The preceding paragraphs are incorporated herein by reference as if re-alleged in full.

8.    Mr. Brandon Minich is over twenty-one years of age, is not a fugitive from justice as defined under 18 U.S.C. § 921(a)(15), is neither an unlawful user of, nor addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), has not been adjudicated a mental defective or committed to a mental institution, is not an alien, has not been discharged from the Armed Forces under dishonorable conditions, has never renounced his United States citizenship, and has never been the subject of a restraining order relating to an intimate partner as defined in 18 U.S.C. § 922(g)(8) and 18 U.S.C. § 921 (a)(32), and has never been convicted in any court of a felony or misdemeanor of domestic violence as defined in 18 U.S.C. § 921(a)(33) and 18 U.S.C. 922(g)(9).

9.     On October 26, 2006, Mr. Minich pleaded guilty in the District Court of Maryland for Montgomery County to one count of Unlawful Wear, Carry, or Transport a Handgun in violation of MD Crim. Law Code § 4-203.

10.    The offense is graded as a misdemeanor and on conviction "the person is subject to imprisonment for not less than 30 days and not exceeding 5 years or a fine of not less than $250 and not exceeding $2,500 or both . . . ." MD Crim. Law Code §4-203(c)(2)(i).

11.    Against his better judgment, Mr. Minich was driving though Maryland carrying a legal firearm. Unfortunately, at the time this offense occurred, he was unaware that it was illegal for him to carry a firearm in Maryland when it was purchased and carried legally in Pennsylvania.

12.    Mr. Minich, on October 26, 2006, was sentenced to 30 days in prison which was suspended and a $200 fine. Mr. Minich successfully completed his sentence without issue.

13.    Mr. Minich's conviction prohibits him from owning and possessing firearms under 18 U.S.C. 922(g)(1), as it is a "crime punishable by imprisonment for a term exceeding one year" as defined in 18 U.S.C. § 921(a)(20). This prohibition exists even though Mr. Minich never served any time in prison, and he never got in any legal trouble again. This prohibition does not expire with any passage of time. It lasts for the rest of his life.

14.    Under 18 U.S.C. 922(g), a person is prohibited from possessing firearms if they have been convicted of a "crime punishable by imprisonment for a term exceeding one year" as defined in 18 U.S.C. § 921(a)(20).

15.    As defined in 18 U.S.C. § 921(a)(20):

The term "crime punishable by imprisonment for a term exceeding one year" does
not include—

(A)    any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices,

or

(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

16.    Violation of this prohibition constitutes a felony criminal offense punishable by imprisonment of up to ten (10) years. *See* 18 U.S.C. § 924(a)(2).

17.    Under 18 U.S.C. § 922(d), it is unlawful to "sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . ." Violation of this prohibition is a felony criminal offense punishable by imprisonment of up to ten (10) years. *See* 18 U.S.C. § 924(a)(2).

18.    All firearms purchasers within the United States who do not possess a Federal Firearms License, meaning, virtually all ordinary civilian consumers of firearms, must complete "Form 4473, Firearms Transaction Record Part I — Over-the-Counter: administered under Defendants' authority, in order to purchase a firearm. 27 C.F.R. § 478.124.

19.     Question 11(c) on Form 4473 asks:

Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?

20.     Defendants instruct firearm dealers not to sell firearms to anyone who answers "yes" to this question. Indeed, Defendants instruct firearm dealers to refrain from even running a background check on anyone who answers "yes" to this question, and simply to deny the transaction based on that answer:

If a prospective purchaser answered "yes" to any of the questions on the ATF Form 4473 (other than questions 9 a. and 9 l. of the 10/98 edition), you should not contact the NICS because the subject is prohibited from purchasing.

BATFE FFL Newsletter, May, 2001, Issue I, at 14, available at http://www.atf.gov/files/publications/newsletters/ffl/ffl-newsletter-2001-05.pdf (last visited February 8, 2024).

If the prospective purchaser answers "yes" to any of the questions [regarding eligibility to possess firearms], the licensee has reasonable cause to believe that the transferee is prohibited. Accordingly, the transfer of a firearm to such a person would be in violation of Federal law. This is true regardless of whether the licensee received a "proceed" or "denied" response from NICS. In fact, there is no reason for the licensee to even contact NICS after a person indicates on the Form 4473 that he or she is prohibited from receiving firearms. The licensee should simply advise the prospective purchaser that the firearm may not be transferred.

BATF FFL Newsletter, September 1999, Issue II, at 2, available at http://atf.gov/files/publications/newsletters/ffl/ffl-newsletter-1999-09.pdf (last visited February 8, 2024).

21.     Mr. Minich desires and intends to possess firearms for self-defense and defense of his family and home.

22.     Due to his conviction, Mr. Minich is prohibited by Defendants from following through with his intent to obtain a firearm, based on Defendants' interpretation and enforcement of 18 U.S.C. § § 921 (a)(20)(B) and 922(g)(1).

23. Mr. Minich refrains from obtaining a firearm only because he reasonably fears arrest, prosecution, incarceration and fine under 18 U.S.C. § 922(g)(1), instigated and directed by Defendants, should he follow through with his plan to obtain a firearm.

24. Mr. Minich refrains from purchasing a firearm from a private party, because doing so would subject him to arrest, prosecution, fine, and incarceration at Defendants' instigation and direction, for violating 18 U.S.C. § 922(g)(1).

25. Considering Defendants' interpretation of federal law, Mr. Minich is unwilling to state on Form 4473 that he has not, in fact, been convicted of a crime punishable by imprisonment for over one year. But should Minich answer, on Form 4473, that he has been convicted of a crime punishable by imprisonment for over one year, any federal firearms licensee who follows Defendants' directives would refuse to sell Mr. Minich a firearm on account of the fact that Mr. Minich is prohibited from possessing firearms under 18 U.S.C. § 922(g)(1). Thus, Mr. Minich suffers the on-going harm of being unable to obtain firearms from licensed federal firearms dealers, which Mr. Minich would, in fact, obtain but for the enforcement of 18 U.S.C. § 921(g)(1).

COUNT ONE
INDIVIDUALIZED, AS-APPLIED CLAIM FOR RELIEF
RIGHT TO KEEP AND BEAR ARMS, U.S. CONST. AMEND. II

26. The preceding paragraphs are incorporated herein by reference as if re-alleged in full.

27. Mr. Minich has no history of violent behavior, or of any other conduct that would suggest he would pose any more of a danger by possessing firearms than an average, law-abiding responsible citizen.

28. Although, Mr. Minich's conviction in Maryland was a firearm related offense, it was simply unlawful possession. There is no allegation he threatened anyone with the firearm.

There is no allegation he used it in a dangerous manner. There is no allegation he did anything dangerous whatsoever with the firearm.

29.   Mr. Minich is unlikely to act in a manner dangerous to public safety, and his possession of firearms would not be contrary to the public interest.

30.   In 2022, the Supreme Court decided *New York State Rifle and Pistol Association v. Bruen*. *Bruen* redefined the Second Amendment and the ways courts analyzed firearm regulations.

31.   No longer was seriousness, cross-jurisdictional consensus and the like relevant. Now the test is, in its simplest terms, whether the firearm regulation at issue is consistent with United States tradition of firearm ownership and regulation.

32.   In *Range v. Attorney General of the United States,* the Third Circuit issued its first holding, *en banc*, for a post-*Bruen* as-applied challenge. Bryan Range was prohibited from possessing firearms due to his 1995 conviction for "making a false statement to obtain food stamps in violation of Pennsylvania law" under 62 Pa.C.S. § 481(a). *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 98 (3d Cir. 2023) (judgment vacated by *Garland v. Range*, 144 S.Ct. 2706 (2024)). The crime for which he was convicted is a misdemeanor of the first degree, and under Pennsylvania law, carries a maximum possible sentence of 5 years imprisonment. *Id*.

33.   Two major holdings regarding Second Amendment analysis were delivered by the court: 1) "the people" protected by the Second Amendment are not limited to "law-abiding, responsible citizens" and 2) once a law is determined to regulate Second Amendment conduct, the government must prove it is justified in stripping one's Second Amendment rights "by demonstrating that it is consistent with the Nation's historical tradition of firearm

regulation." *Id*. at 103. "To be compatible with the Second Amendment, regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue." *Id*.

34.    Following the Third Circuit's first decision in *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 98 (3d Cir. 2023), the Supreme Court took another second amendment case in *United States v. Rahimi*, 602 U.S. 680 (2024).

35.    In *Rahimi*, the Supreme Court clarified *Bruen* and what was required to justify a firearm regulation. "In *Bruen*, we directed courts to examine our 'historical tradition of firearm regulation' to help delineate the contours of the right. We explained that if a challenged regulation fits within that tradition, it is lawful under the Second Amendment. We also clarified that when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to 'justify its regulation.' Nevertheless, some courts have misunderstood the methodology of our recent Second Amendment cases." *Rahimi*, 602 U.S. at 691 (internal citations omitted).

36.    "These precedents were not meant to suggest a law trapped in amber . . . the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.' Discerning and developing the law in this way is 'a commonplace task for any lawyer or judge.' Why and how the regulation burdens the right are central to this inquiry. The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.' *Id*. at 691-92.

37.     The Court went on to conclude that 18 U.S.C. 922(g)(8), which prohibited individuals subject to an active protection from abuse orders, was constitutional. *Id*. at 700. It relied upon both surety and going affray laws which limited an individual's right to keep and bear arms when "An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id*. at 702.

38.     Following *Rahimi*, *Range*, which the Government petitioned for a writ of certiorari, was vacated and remanded. See *Garland v. Range*, 144 S.Ct. 2706 (2024).

39.     Following remand, the Third Circuit once again took up the Range case en banc and issued its decision on December 23, 2004. See *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) (en banc) (*Range II*).

40.     *Range II* once again established all citizens are members of "the people" under the Second Amendment. *Id*. at 226. The Court concluded this for four (4) reasons:

   a.   While the Supreme Court routinely referenced "Law-abiding, responsible citizens" in its Second Amendment jurisprudence, these references were dicta. *Id*. "And while we heed that phrase, we are careful not to overread it as we and other circuit courts did with *Heller's* statement that the District of Columbia firearm law would fail under any form of heightened scrutiny." *Id*.

   b.   "Other constitutional provisions refer to 'the people.' For instance, 'the people' are recognized as having rights to assemble peaceably, to petition the government for redress, and to be protected against unreasonable searches and seizures. Felons are not categorically barred from First Amendment or Fourth Amendment protection because of their status . . . We see no reason to adopt a reading of 'the people' that excludes

Americans from the scope of the Second Amendment while they retain their constitutional rights in other contexts." *Id*.

c.  While "all people have the right to keep and bear arms," though the legislature may constitutionally "strip certain groups of that right." *Id*. at 226-27.

d.  Agreeing with the claim that "felons are not among 'the people' protected by the Second Amendment' devolves authority to legislators to decide whom to exclude from 'the people.' We reject that approach because such 'extreme deference gives legislatures unreviewable power to manipulate the Second Amendment by choosing a label.'" Id. at 228.

41.  After concluding that Range was a member of "the people" the Court went on to hold the application of 18 U.S.C. § 922(g)(1) to him was unconstitutional as "the record contains no evidence that Range poses a physical danger to others. Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id*. at 232.

42.  The Third Circuit decided one additional case following Range further clarifying what is required to justify a firearm regulation, at least when it comes to as-applied challenges such as this.

43.  In *Pitsilides v. Barr*, the Third Circuit held "felons seeking to challenge the application of § 922(g)(1) at least may bring declaratory judgment actions. But to grant such relief, the record must be sufficient for a court to make an individualized determination that the applicant does not presently pose the kind of danger envisioned by *Rahimi* and *Range II*. In keeping with *Heller's* conclusion that 'the Second Amendment confers an individual

right to keep and bear arms,' that determination necessarily demands individualized fact-finding." *Pitsilides v. Barr*, No. 21-3320, 2025 WL 441757, at *5 (3d Cir. Feb. 10, 2025).

44. Mr. Minich is one of "the people" protected by the Second Amendment.

45. Mr. Minich's Second Amendment rights are regulated by Defendant's prohibition of his possession of firearms under 18 U.S.C. § § 921 (a)(20)(B) and 922(g)(1).

46. As Mr. Minich's Second Amendment rights are being regulated and he is one of "the people" protected by the Second Amendment, the burden shifts to the Defendants to demonstrate that the firearm regulation, namely Minich's prohibition due to his conviction for Unlawful Wear, Carry, or Transport a Handgun, "is consistent with this Nation's historical tradition." *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111, 2126 (2022).

47. It is believed and therefore averred that the Defendants cannot meet this burden.

48. Accordingly, Mr. Minich's circumstances are not similar to those persons historically excluded from the right to arms.

49. Furthermore, Mr. Minich's crime as well as his conduct since his conviction do not demonstrate that Mr. Minich "present[s] a special danger of misusing firearms." *Pitsilides*, No. 21-3320, 2025 WL 441757, at *5 (3d Cir. Feb. 10, 2025)

50. Mr. Minich may not apply for relief under 18 U.S.C. §§ 925(c) because that provision has been unfunded for several years.

51. The only alternative for Mr. Minich to restore his rights would be to obtain a Pardon, the granting of which is entirely discretionary and highly unlikely.

52. Due to Mr. Minich's unique personal circumstances, including but not limited to the nature of his misdemeanor convictions, the passage of time since those convictions, the absence

of violent history, his trustworthiness with firearms and the lack of danger that his possession of firearms would pose, and, most importantly, the fact that the Government cannot meet its burden to demonstrate permanently disarming Mr. Minich is consistent with this Nation's historical regulation of firearm ownership it is unconstitutional to apply against Mr. Minich personally the firearms prohibition of 18 U.S.C. § 922(g)(1) based upon his 2006 conviction for Unlawful Wear, Carry, or Transport a Handgun under MD Crim. Law Code § 4-203.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in his favor, and against Defendants, as follows:

a)    A declaration that 18 U.S.C. § 921(g)(1) cannot be applied against Mr. Brandon Minich based upon his 2006 conviction for Unlawful, Wear, Carry, or Transport a Handgun under MD Crim. Law Code §4-203;

b)    A declaration that application of 18 U.S.C. § 922(g)(1) against Mr. Brandon Minich based upon his 2006 conviction for Unlawful, Wear, Carry, or Transport a Handgun under MD Crim. Law Code §4-203 violates the Second Amendment to the United States Constitution;

c)    An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 18 U.S.C. § 922(g)(1) against Mr. Brandon Minich based upon his 2006 conviction for Unlawful, Wear, Carry, or Transport a Handgun under MD Crim. Law Code §4-203;

d)      Costs of suit;

e)      Attorney Fees and Costs pursuant to 28 U.S.C. § 2412; and

f)      Any other further relief as the Court deems just and equitable.


                                        Respectfully submitted,
                                        GIARAMITA LAW OFFICES, P.C.


                                        /s/ Richard S. Roberts Jr.
Date:  March 28, 2025                   Richard S. Roberts, Jr., Esquire
                                        Attorney for the Defendant
                                        70 E. Broad Street, Bethlehem, PA 18018
                                        Tel:  484-558-0076/ Fax: 484-202-6332
                                        Email: rich@glawpa.com